IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

CHAUCER CORPORATE CAPITAL, §
NO. 2 LIMITED, §
    Plaintiff, §
  §
v. §         CIVIL ACTION NO. 09-2701
  §
VILLAGE CONTRACTORS, INC. and §
HARDAM S. AZAD d/b/a FIVE §
MILLION SQUARE FEET COMPANIES, §
    Defendants, §
  §
VILLAGE CONTRACTORS, INC. §
    Counter and Third-Party §
    Plaintiff, §
  §
v. §
  §
HARDAM S. AZAD, INDIVIDUALLY, §
AS MANAGING PARTNER OF HOUSTON §
SHOPPING CENTER MANAGERS, L.P. §
D/B/A COM REALTY A/K/A REALTY §
CORP., HOUSTON SHOPPING CENTER §
MANAGERS I, INC., GENERAL §
PARTNER OF HOUSTON SHOPPING §
CENTER MANAGERS, L.P., MANOHAR §
S. MANN, INDIVIDUALLY, AS A §
PARTNER OF HOUSTON SHOPPING §
CENTER MANAGERS, L.P., AND AS §
THE SOLE OFFICER AND DIRECTOR §
OF TRADING FAIR IV, INC., and §
TRADING FAIR IV, INC., §
    Counter and Third-Party §
    Defendants, §
  §
v. §
  §
MOBILE DRY FORCE, L.L.C., §
    Intervenor. §

MEMORANDUM AND ORDER

I.  Background

    This is an interpleader action filed by Interpleader Plaintiff

Chaucer Corporate Capital No. 2 Limited ("Chaucer"), on its own

behalf; Chaucer is the lead underwriter of Certain Underwriters at Lloyd's of London severally subscribing to Policy No. AMR-21528 (the "Policy").   When filed, Chaucer also sought declaratory judgment on numerous disputed insurance policy claims asserted against Chaucer by Defendants Hardam S. Azad d/b/a Five Million Square Feet Companies, Houston Shopping Center Managers I, Inc., Houston Shopping Managers, L.P., and Trading Fair IV, Inc. (collectively, the "Insured Defendants").   At the request of the parties, the Court severed the latter insurance dispute from this interpleader action.

As a result of Hurricane Ike, certain of Hardam S. Azad's ("Azad") properties suffered damage.  One of these was the property at 630 West Little York in Houston (the "Property"), which is owned by Defendant Trading Fair IV, Inc. ("Trading Fair"), of which Azad is a shareholder and the registered agent for service, and whose sole officer is Defendant Manohar Mann ("Mann").[1]   Village Contractors, Inc. ("Village") was employed to provide emergency services and temporary repair work on the Property pursuant to a contract.[2]   Village, in turn, subcontracted with Intervenor

---

[1] Id. at 3.

[2]  The contract was between "Realty Corp." and Village. Document No. 44, ex. A.  Village subsequently determined that this entity was really "ComRealty," the registered assumed name of Houston Shopping Center Managers, L.P.  This entity has two limited partners--Azad and Mann--and a general partner--Houston Shopping Center Managers I, LLC, which is wholly owned by Azad.  Document No. 24, ex. E. at VC000283, VC000316.

Plaintiff Mobile Dry Force, LLC ("Mobile Dry Force") to perform a portion of the emergency repairs.

In November 2008, Chaucer caused to be issued five checks, each made out jointly to Five Million Square Feet Companies and Village,[3] in the total amount of $338,382.00 for advance payments on the emergency repairs required to be made. However, rather than forwarding the checks to Village, Azad four months later returned them to Chaucer.[4]

Village sued Azad (and his various associated corporations and partnerships) for nonpayment in Texas state court in Harris County in February 2009.[5] Mobile Dry Force filed suit against Village and Azad in Texas state court in June 2009, seeking $143,500 for materials and labor it provided to Village for repair of the Property, and to foreclose its claimed mechanic's and materialman's lien on the property. The two state cases were consolidated in the 189th Judicial District Court, styled <u>Village Contractors, Inc. v. Trading Fair IV, Inc. et al.</u>, Cause No. 2009-07591 (the "State Court Suit").

On August 21, 2009, Chaucer filed this interpleader action against Azad, individually and d/b/a Five Million Square Feet Companies, and Village, seeking to deposit the $338,382.00 in

---

[3] Document No. 41 at 4.

[4] Document No. 24, ex. H.

[5] Document No. 41 at 4.

dispute that it stated it owes to whichever party proves its entitlement to it (the "Funds"). Although the Court granted Chaucer's Motion to Deposit Interpleaded Funds in a Non-Interest Bearing Account (Document No. 6) on October 1, 2009,[6] Chaucer never did so. It subsequently represented that, while "ready, willing, and able to do so," it had also agreed to Azad's request instead "to deposit the money into the registry of the court in the State Court Lawsuit."[7] Village, however, opposed deposit of the Funds into the state court registry,[8] and Chaucer therefore has not deposited the funds in either court. Village now moves to enforce the Court's original order to deposit the Funds into this Court's registry,[9] and for partial summary judgment that it is entitled to the Funds.[10]

The Insured Defendants move to dismiss Chaucer's complaint in interpleader and either to dismiss or abate Chaucer's, Village's, and Mobile Dry Force's complaints pursuant to the doctrine of Colorado River abstention.[11] The several pending motions are considered below.

---

[6] Document No. 8 (Order Dated October 1, 2009).

[7] Document No. 25 at 3.

[8] Id.

[9] Document No. 83.

[10] Documents Nos. 24, 56.

[11] Documents Nos. 47, 48.

II.  <u>Motion to Dismiss the Complaint in Interpleader</u>

The Insured Defendants assert that Chaucer's complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and pursuant to Federal Rule of Civil Procedure 12(b)(7) because of a failure and inability to join all necessary parties as per Rule 19,[12] based upon Plaintiff's not having joined all of the Lloyd's Underwriters as plaintiffs and hence, not having shown complete diversity of citizenship between Plaintiffs and Defendants.

A.  <u>Standard of Review</u>

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss an action for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1).  The burden of establishing subject matter jurisdiction is on the party seeking to invoke it.  *See* <u>Hartford Ins. Group v. Lou-Con Inc.</u>, 293 F.3d 908, 910 (5th Cir. 2002).  In evaluating a motion to dismiss pursuant to Rule 12(b)(1), a court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.  <u>Ramming v. United States</u>, 281 F.3d 158, 161 (5th Cir. 2001).  The question of subject matter

_____

[12] Document No. 48 at 3.

jurisdiction is for the court to decide even if the question hinges on legal or factual determinations. *See* id.

Rule 12(b)(1) challenges to subject matter jurisdiction come in two forms: "facial" attacks and "factual" attacks. *See* Paterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981). A facial attack, which consists of a Rule 12(b)(1) motion unaccompanied by supporting evidence, challenges the court's jurisdiction based solely on the pleadings. Id. When presented with a facial challenge to subject matter jurisdiction, a court examines whether the allegations in the pleadings are sufficient to invoke the court's subject matter jurisdiction, assuming the allegations to be true. Id. When accompanied by supporting evidence, a Rule 12(b)(1) motion challenging the court's jurisdiction is a factual attack. Id. "A 'factual attack' . . . challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980); Taylor v. Dam, 244 F. Supp. 2d 747, 753 (S.D. Tex. 2003). A party responding to a factual attack on the court's jurisdiction generally bears the burden of proving by a preponderance of the evidence that the court has subject matter jurisdiction. Paterson, 644 F.2d at 523. Nevertheless, uncontested factual allegations in the complaint are taken as true. Russell v. Choicepoints Servs., Inc., 302 F. Supp. 2d 654, 659

(E.D. La. 2004) (citing <u>Den Norske Stats Oljeselskap As v. HeereMac Vof</u>, 241 F.3d 420, 424 (5th Cir. 2001)).[13]

Rule 12(b)(7) permits dismissal of an action for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7).  "Rule 19 provides for the joinder of all parties whose presence in a lawsuit is required for the fair and complete resolution of the dispute at issue." <u>HS Res., Inc. v. Wingate</u>, 327 F.3d 432, 438 (5th Cir. 2003).  It also "provides for the dismissal of litigation that should not proceed in the absence of parties that cannot be joined." <u>Id.</u>

The application of Rule 12(b)(7) involves a two-step inquiry under Rule 19.  <u>See</u> <u>id.</u> at 439; <u>Pulitzer-Polster v. Pulitzer</u>, 784 F.2d 1305, 1309 (5th Cir. 1986).  "First, Rule 19(a) provides a framework for deciding whether a given person should be joined. Second, if joinder is called for, then Rule 19(b) guides the court in deciding whether the suit should be dismissed if that person cannot be joined." <u>Pulitzer-Polster</u>, 784 F.2d at 1309.  The movant has the burden to show its entitlement to relief under Rule 12(b)(7).  <u>See</u> 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1359, at 67 (3d ed. 2004); <u>HS Res.</u>, 327 F.3d at 438 n.11.

---

[13] Because the Insured Defendants factually challenge only the citizenship of Village, the Court will assume all other facts alleged in Chaucer's Amended Complaint in Interpleader and for Injunctive Relief (Document No. 41) are true.

B.   <u>Basis for Jurisdiction</u>

Chaucer alleges jurisdiction under either statutory interpleader (28 U.S.C. § 1335) or rule interpleader (Federal Rule of Civil Procedure 22).  Jurisdiction under statutory interpleader exists if:

> (1) Two or more adverse claimants, of diverse citizenship . . . are claiming or may claim to be entitled to such money or property . . . and if (2) the plaintiff has deposited such money or property . . . there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.

28 U.S.C. § 1335(a).  The second requirement of jurisdiction under the statute--actual deposit of the funds in court--is not met.  Chaucer has not deposited the Funds in the Court's registry.[14]

Rule 22 interpleader, on the other hand, "does not require a deposit to establish jurisdiction."  <u>In re Enron Corp. Sec., Derivative & "Erisa" Litig.</u>, 391 F. Supp. 2d 541, 560 n.29 (S.D. Tex. 2005) (citing <u>Murphy v. Travelers Ins. Co.</u>, 534 F.2d 1155,

---

[14] The first requirement *is* met, such that upon Chaucer's deposit of the Funds into the Court's registry, jurisdiction under section 1335 will be perfected.  Section 1335 requires only minimal diversity--that is, that *any* two claimants are of diverse citizenship, regardless of the citizenship of any other claimant. *See* <u>State Farm Fire & Cas. Co. v. Tashire</u>, 87 S. Ct. 1199, 1203-04 (1967).  Mobile Dry Force is a citizen of Michigan; no other claimant is.  See *infra* n.17.

1159 (5th Cir. 1976); Percival Constr. Co. v. Miller & Miller
Auctioneers, Inc., 532 F.2d 166, 170-71 (10th Cir. 1976)).
However, Rule 22 does not provide an independent basis for
jurisdiction; in the absence of any federal question, diversity of
citizenship under 28 U.S.C. § 1332 must support jurisdiction. *See*
13F CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3636, at
349-50 (3d ed. 2009). This, of course, requires *complete*
diversity--not among claimants, but as between the interpleader
plaintiff on one side, and all claimants on the other. *See*
Travelers Ins. Co. v. First Nat'l Bank of Shreveport, 675 F.2d 633,
637 n.9 (5th Cir. 1982); *see also* 13F WRIGHT ET AL., *supra* § 3636, at
350.

Here, Interpleader Plaintiff Chaucer is a British corporation
with its principal place of business in the United Kingdom.[15]   On
the other hand, the Insured Defendants are citizens of Texas[16] and
Mobile Dry Force is a limited liability company whose sole member,
Mobile Air, Inc., is a citizen of Michigan.[17]   Although Village and

---

[15] Document No. 41 at 2 (Am. Cmplt. in Interpleader).

[16] Id.

[17] Document No. 41 at 3; Document No. 42 at 1-2; Document No.
43 at 2; Document No. 48 at 3. Although Mobile Dry Force dubs
itself an "intervenor plaintiff," it is more appropriately aligned
as a claimant to a portion of the Funds for purposes of determining
jurisdiction. *See, e.g.,* Lowe v. Ingalls Shipbuilding, A Div. of
Litton Sys., Inc., 723 F.2d 1173, 1177-78 (5th Cir. 1984) ("It is
the court's duty to 'look beyond the pleadings, and arrange the
parties according to their sides in the dispute." (quoting WRIGHT,
MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 3608 at 639,

Chaucer both assert Village is a citizen of Virginia, its place of incorporation,[18] the Insured Defendants assert that Village's principal place of business is in Texas, which would make it a Texas citizen as well.[19]  Regardless, even if Village were a citizen of both Virginia and Texas, its presence would not destroy diversity jurisdiction with Chaucer.  Thus, complete diversity between the interpleader plaintiff and the claimants supports jurisdiction under 28 U.S.C. § 1332.

C.   The Absence of Other Underwriters

     The Insured Defendants nonetheless point to Chaucer's not having joined the other underwriters on the Policy, asserting that all are required parties that must be aligned on the interpleader plaintiff side.  If the other underwriters are required, Chaucer's

---

641)).  However, even were Mobile Dry Force aligned with Chaucer, complete diversity would still exist; no other claimant is a Michigan citizen.

     [18] Document No. 41 at 2 (Chaucer); Document No. 43 at 2 (Village).

     [19] Document No. 48 at 2.  Village only alleges its place of incorporation in its Answer and Amended Complaint.  *See* Document No. 43 at 2 (Answer); Document No. 44 at 2 (Amended Complaint). The Insured Defendants point to an affidavit from Village's president filed in the State court Suit stating that, due to "the actions of Hardam S. Azad, Village Contractors, Inc. was required to consolidate its offices" by closing its offices in Florida and transferring all files "to its offices in San Antonio."  Document No. 48, ex. A.  The Insured Defendants thus infer that Village's principal place of business may be San Antonio, making Village a Texas resident, as well.

failure to join them leaves open the possibility that complete diversity is lacking if any underwriter on the Policy is a citizen of either Texas, Virginia, or Michigan.  Moreover, a failure to join these parties may warrant dismissal under Rule 12(b)(7).

Determining the proper parties to a suit involving a Lloyd's policy requires a brief overview of the structure of Lloyd's of London.  It is not an insurance company; rather, it is "a self-regulating entity which operates and controls an insurance market." Corfield v. Dallas Glen Hills LP, 355 F.3d 853, 857 (5th Cir. 2003) (citing John M. Sylvester & Roberta D. Anderson, Is It Still Possible to Litigate Against Lloyd's in Federal Court?, 34 TORT & INS. L.J. 1065, 1068 (1999)).  A group of anonymous underwriters called "Names" band together in Syndicates; each Syndicate in turn nominates one of its Names to represent all of that Syndicate's Names' interests.  Corfield, 355 F.3d at 858; E.R. Squibb & Sons, Inc. v. Acc. & Cas. Ins. Co., 160 F.3d 925, 929 (2d Cir. 1998). The Syndicates are not considered to have their own legal identity. Squibb, 160 F.3d at 929.  In practice, many Names from several Syndicates join together to underwrite a policy, each Name being severally--not jointly--responsible for a particular share of the policy, as the policy is "actually a collection of many bilateral contracts running between the insured and each Name."  Corfield, 355 F.3d at 864; Squibb, 160 F.3d at 929, 937.  That is, each Name

takes upon itself only a *share* of the total risk.  *See* <u>Corfield</u>, 355 F.3d at 864.

> When litigation over a Lloyd's policy occurs, only one Name (the lead underwriter disclosed on the policy) is ordinarily sued. Nevertheless, all the Names subscribing to that policy are liable for their several shares of any adverse judgment against the Lloyd's underwriters.  This is because the standard Lloyd's policy running between the insured and each Name states "that in any suit instituted against any one of [the Names] upon this contract, [all the Names] will abide by the final decision of such Court or of any Appellate Court in the event of an appeal."  Each Name is, therefore, bound by contract with the insured to adhere to the decision reached in the suit.

<u>Squibb</u>, 160 F.3d at 929.[20]  However, due to the nature of the relationship between each Name and the insured--that of a series of bilateral contracts--the Names' responsibility to abide by a judgment against any other name on the same policy runs *vertically* between that particular Name and the insured, not *horizontally* from Name to Name, as would be analogous to a partnership.  *See* <u>Corfield</u>, 355 F.3d at 862 (discussing <u>Squibb</u>, 160 F.3d at 937).

The Second Circuit in <u>Squibb</u> held that the citizenship of *every* underwriter on a Lloyd's policy is relevant to diversity jurisdiction when the lead underwriter sues as a *representative* of all the policy's underwriters.  <u>Id.</u> at 928, 931.  However:

---

[20] The same standard policy language appears in the Policy. Document No. 53 at 6.

> The Second Circuit rejected the notion that the non-party
> Names' citizenship would have to be considered simply
> because they too would be bound by whatever judgment is
> rendered against the only Name sued.  The Second Circuit
> reasoned that a federal court does not lose jurisdiction
> simply because a non-diverse non-party is contractually
> bound to indemnify the diverse parties.  As long as the
> party being sued is a real party to the controversy, the
> fact that the case will determine the rights of
> non-diverse litigants through collateral estoppel or
> preclusion does not affect jurisdiction.  Because the
> lead underwriter is severally liable on the policy, he is
> a real party to the controversy.  Thus, where he appears
> in the litigation solely on an individual basis, only his
> citizenship need be considered.

Corfield, 355 F.3d at 861 (discussing Squibb, 160 F.3d at 936-37) (citations omitted).  The Fifth Circuit, upon reviewing holdings on related issues in the Third, Sixth, and Seventh Circuits, agreed with the analysis in Squibb, holding that where an underwriter on a Lloyd's policy sues or is sued in its individual capacity, only its own citizenship is relevant to a diversity inquiry.  Corfield, 355 F.3d at 860-64 & 864 n.9.  Moreover, other underwriters subscribing to the policy are not essential parties to an individual underwriter's suit brought on its own behalf.  See id. at 864-66 (discussing the principles supporting the conclusion that a Name can sue and be sued individually).  Nonetheless, the individual underwriter must still be able to satisfy the amount-in-controversy requirement through the portion of the policy for which it is severally liable.  See id. at 864.

Here, Chaucer, the lead underwriter, has brought suit on its own behalf.[21]  Therefore, no other parties need be joined, and only Chaucer's citizenship and the amount in controversy with respect to Chaucer is relevant to a diversity inquiry.  Chaucer subscribes to 15 percent of the Policy, which has a limit of $37,145,318.69; accordingly, its potential liability under the Policy is $5,571,797.79.  The complaint alleges that *Chaucer* caused to be issued five checks totaling $338,382.00 jointly in the name of Five Million Square Feet Companies and Village,[22] and that Chaucer tenders $338,382.00 to resolve the competing claims.  These facts are uncontested, and must therefore be accepted as true on determination of a motion to dismiss.  Russell v. Choicepoints Servs., Inc., 302 F. Supp. 2d 654, 659 (E.D. La. 2004) (citing Den Norske Stats Oljeselskap As v. HeereMac Vof, 241 F.3d 420, 424 (5th Cir. 2001)).[23]  Thus, Chaucer has also met the minimum amount in

---

[21] Document No. 41 at 1.

[22] Id. at 4.

[23] The Court also notes that Mark Benton, Deputy Claims Manager for the entity that handles property underwriting and claims for Chaucer, states in his affidavit that contractual agreements between the Names on the Policy bind them "to pay their participation percentage of sums due and owing in the event a judgment is entered against Chaucer." Document No. 15, ex. A at 3. That others are bound to indemnify Chaucer does not lessen *Chaucer's* ultimate liability for the $338,382.00 it seeks to interplead. *Cf.* Corfield, 355 F.3d at 861 ("[A] federal court does not lose jurisdiction simply because a non-diverse non-party is contractually bound to indemnify the diverse parties." (discussing Squibb, 160 F.3d at 936-37)).

controversy requirement, and the Court's diversity jurisdiction is established.

### III.   Motion to Dismiss or Abate

The Insured Defendants also seek dismissal or abatement under the doctrine of Colorado River abstention.   *See* Colorado River Water Conservation Dist. v. United States, 96 S. Ct. 1236 (1976). Colorado River abstention is based upon "principles of federalism, comity, and the conservation of judicial resources."   Black Sea Inv., Ltd. v. United Heritage Corp., 204 F.3d 647, 650 (5th Cir. 2000).   It is "'an extraordinary and narrow exception' to the 'virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.'"   Id. (quoting Colorado River, 96 S. Ct. at 1246).   Abstention under this doctrine is appropriate only when triggered by certain parallel state and federal proceedings. Diamond Offshore Co. v. A & B Builders, Inc., 302 F.3d 531, 540 (5th Cir. 2002), *overruled on other grounds by* Grand Isle Shipyard, Inc. v. Seacor Marine, LLC, 589 F.3d 778 (5th Cir. 2009).   Suits are parallel "if they involv[e] the same parties and the same issues."   Id. (quoting Republic Bank Dallas, Nat'l Assoc. v. McIntosh, 828 F.2d 1120, 1121 (5th Cir. 1987)).   In determining whether suits are parallel, the "central inquiry is whether there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case."   Great Lakes Dredge

& Dock Co., LLC v. Larrisquitu, Nos. H-06-3489, H-06-3669, H-06-4040, 2007 WL 2330187, at *14 (S.D. Tex. Aug. 15, 2007) (Rosenthal, J.).

Although no bright-line rule determines whether abstention is appropriate, the Supreme Court has identified six factors relevant to the determination:

> (1) [A]ssumption by either court of jurisdiction over a res; (2) the relative inconvenience of the forums; (3) the avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) whether and to what extent federal law provides the rules of decision on the merits; and (6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction.

Black Sea, 204 F.3d at 650 (quoting Murphy v. Uncle Ben's, Inc., 168 F.3d 734, 738 (5th Cir. 1999)).  Even assuming that the appropriate degree of parallelism is present between the state court and this action,[24] there are not present here the "exceptional circumstances" necessary to justify abstention.

Relative to the first factor, as noted above, Chaucer has not deposited the Funds into the registry of either this Court or the

_____

[24] Village asserts that it "has dismissed all contractual claims based on the interplead funds" in the State Court Suit. Document No. 91 at 2.  Trading Fair, however, filed a counterclaim over the breach of contract action after Village's dismissal.  Id. Although Village has represented that the state court had scheduled a hearing on whether to dismiss the Insured Defendants' new counterclaims for July 2, no party has reported the outcome of that hearing.  No party disputes that resolution of the breach of contract claims would resolve entitlement to the Funds at issue here.

state court.  Thus, there has been no exercise of jurisdiction over the Funds by either court.  "The absence of this factor is not, however, a 'neutral item, of no weight in the scales.'"  <u>Murphy</u>, 168 F.3d at 738 (quoting <u>Evanston Ins. Co. v. Jimco, Inc.</u>, 844 F.2d 1185, 1191 (5th Cir. 1988)).  "Rather, the absence of this first factor weighs against abstention."  <u>Id.</u> (citing <u>Evanston</u>, 844 F.2d at 1191).

The second factor also weighs against abstention, as both suits are in Houston, Texas.  *See* <u>id.</u>

The third factor--piecemeal litigation--weighs in favor of abstention.  The state court well may adjudicate much of the merits of the dispute while this Court retains jurisdiction to determine entitlement to the Funds.  However, the separate adjudication of distinct legal issues arising out of the same operative facts is not, alone, the kind of piecemeal litigation that <u>Colorado River</u> sought to avoid.  There, the Supreme Court first took note of the "clear federal policy" of "the avoidance of piecemeal adjudication of water rights in a river system," which is akin to the policy "underlying the rule requiring that jurisdiction be yielded to the court first acquiring control of property."  96 S. Ct. at 1247. This is because of the concern of "permitting inconsistent dispositions of property," which is heightened in the instance of water rights, "the relationships among which are highly interdependent."  <u>Id.</u>  Moreover, this policy recognized the

17

"availability of comprehensive state systems for adjudication of water rights as the means for achieving these goals." Id.  No such comprehensive system of state or regulatory law is present here, and there is no showing of a likelihood of inconsistent dispositions of rights that will generate further litigation. Thus, to the extent this factor favors abstention, its relative weight does not overcome the factors weighing against abstention.

The fourth factor, the relative order in which jurisdiction was obtained by the forums, "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." Murphy, 168 F.3d at 738 (quoting Evanston, 844 F.2d at 1190).  Docket call for trial in this Court is set for January 2011.  Trial in the state court action was originally set for May 10, 2010, but has been continued. Discovery has advanced in both cases, for a longer period of time in the first-filed state court case, but Village has pointed to Chaucer's production, pursuant to discovery practices in this Court, of "thousands of pages of documents" and has presented its claims adjuster for an oral deposition.[25]  Although on balance this factor may slightly favor abstention, it is not the same as in Colorado River, where there was an "apparent absence of any proceedings in the District Court, other than the filing of the complaint."  96 S. Ct. at 1248.

---

[25] Document No. 70 at 4.

18

Fifth, "[t]he absence of a federal-law issue does not counsel in favor of abstention." Black Sea, 204 F.3d at 651 (quoting Evanston, 844 F.2d at 1193). The Court's task is "not to find some substantial reason for the exercise of federal jurisdiction"; instead, it is to "ascertain whether there exist 'exceptional circumstances,' the 'clearest of justifications,' that can suffice under Colorado River to justify the surrender of that jurisdiction." Id. (quoting Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 103 S. Ct. 927, 942 (1983)). That the present dispute is governed by well established Texas law with no new or novel legal issues of first impression, therefore, is at most a neutral factor. See id.

Finally, the sixth factor counsels against abstention. Because Chaucer initiated this action in federal court and is not a party in the state court case, it is not certain that its interests would be protected in state court. See, e.g., JPMorgan Chase Bank, N.A. v. Okla. Oncology & Hematology, P.C., No. H-06-0645, 2007 WL 646372, at *7 (S.D. Tex. Feb. 26, 2007) (Lake, J.). As the Supreme Court has counseled:

> When a district court decides to dismiss or stay under Colorado River, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all.

<u>Moses H. Cone</u>, 103 S. Ct. at 943.  After examining the factors, and keeping in mind its "virtually unflagging obligation" to exercise its jurisdiction, the Court finds no "exceptional circumstances" nor the "clearest of justifications" such as to warrant <u>Colorado River</u> abstention.  <u>Colorado River</u>, 96 S. Ct. at 1246 (citation omitted).

## IV.   <u>Motion for Summary Judgment</u>

Village moves for partial summary judgment that it is entitled to the Funds.  After carefully reviewing the motion, the summary judgment evidence, and arguments, the Court finds that there are genuine issues of material fact on the underlying contract dispute regarding the adequacy of Village's roof repairs and the amount of the insurance proceeds to which Village may be entitled.  Viewing Village's summary judgment evidence in the light most favorable to Azad and Trading Fair, it fails to establish that Village is entitled to recover as a matter of law the full sum of $338,382.00.[26]

---

[26] The Court makes this finding based upon the inadequacy of the evidence submitted by Village and therefore need not consider Village's several objections to Azad's and Trading Fair's affidavits and evidence.  Further, Village's Rule 12(f) Motion to Strike and 56(g) Motion for Costs (Document No. 59) is DENIED AS MOOT.  With respect to Village's request for sanctions, Federal Rule of Civil Procedure 11 requires a motion for sanctions to be "made separately from any other motion."  FED. R. CIV. P. 11(c)(2).  Similarly, Village's Objection to and Amended Rule 12(f) and Rule 56(g) Motion to Strike Defendants Azad and Trading Fair IV, Inc.'s Late-Filed First Amended Response (Document No. 65) is DENIED AS MOOT.

## V.  Motion to Deposit Funds

As discussed above, this is a Rule 22 interpleader action, which requires no deposit of funds into the Court's registry.  *See* 7 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1716, at 655 (3d ed. 2001).  "However, the general equitable powers of the court permit it to receive a deposit . . . in accordance with Rule 67." Id., § 1716, at 655-56.

Village asks that Chaucer be ordered "to place the funds tendered to the Court in an **interest-bearing** account 'in the registry of the Court.'"[27]  Chaucer has filed no response either to support or to oppose the motion.  The Court observes, however, that by Order signed and entered October 1, 2009, the Court *granted* Chaucer's motion to deposit interpleaded funds in the amount of $338,382.00 in a non-interest bearing account in the registry of the Court.  Chaucer represented in its motion that it would deliver to the Court a check in that amount, payable to the Clerk of this Court, "upon this Court entering an Order accepting funds and ordering them invested in a non-interest bearing account."[28]  Chaucer has not done so.

The fundamental function of an interpleader action is to permit a party to tender and deposit into the registry of the Court

---

[27] *See* Doc. No. 83 at 3 (emphasis in original).

[28] Document No. 6 at 2.

21

funds that the movant concedes it owes to some party, but for which funds there are competing claimants.   Thus, the plaintiff may absolve itself from double or multiple liability by tendering the funds and withdrawing from the litigation to permit the competing claimants to litigate with each other for those funds.   The interpleader action and the deposit of funds into the registry of the Court, therefore, are for the benefit of the party filing the interpleader.   Although Chaucer successfully sought an order that it pay the Funds into the registry of the Court, for whatever reason it has not availed itself to that privilege.   Its failure to deposit the funds, of course, necessarily precludes it from receiving one of the benefits of a statutory interpleader under 28 U.S.C. § 1335, namely, injunctive relief against other actions being brought against it for the funds.   *See* WRIGHT ET AL., *supra* § 1717, at 659.   In any event, the Court finds no need for a second order that is merely redundant of the Order entered October 1, 2009.

Village has pointed to one aspect of the October 1, 2009 Order, however, that should be amended.   Specifically, and contrary to Chaucer's proposed Order that the Court signed on October 1, 2009, the Funds deposited must be deposited by the Clerk of Court in an interest-bearing account or invested in a Court-approved interest-bearing instrument.   *See* FED. R. CIV. P. 67(b).   The Order of October 1, 2009, is therefore AMENDED to require the deposit to

22

be in an interest-bearing account.  Village's motion is otherwise
DENIED as moot.

## VI.  <u>Other Motions</u>

The Court has carefully considered Village's Motion for Rule
11(b) Sanctions Regarding Third-Party Defendant Jagdesh Azad's
"Joinder in Pending Motions to Dismiss (Document No. 75), and
Azad's Response in opposition, and Village's Motion for Leave to
File Motion to Strike, or, in the Alternative, Objections and Reply
to Defendant Jagdesh Azad's Late-Filed Response to the Motion for
Sanctions Against Attorney Harmeyer (Document No. 82).  Both
motions are without merit and will be denied.  Likewise, Village's
Motion for Rule 4 Costs (Document No. 77), to which Mrs. Azad has
responded with proof of payment to Village Contractors, Inc. of
$163.65,[29] the amount attributable to the costs of making service
according to Village's submissions, which she paid when first
notified of Village's request, is without merit and therefore will
be denied, as will be Village's Motion to Strike Mrs. Azad's
Response (Document No. 86).

## VII. <u>Order</u>

Based on the foregoing, it is

---

[29] Document No. 85, ex. 1.

ORDERED that Defendants Hardam S. Azad d/b/a Five Million Square Feed Companies, Houston Shopping Center Managers, I, Inc., Houston Shopping Center Managers, L.P., and Trading Fair IV, Inc.'s (collectively, the "Insured Defendants") Motion to Dismiss, or, Alternatively, Abate (Document No. 47) and the Insured Defendants' Motion to Dismiss Complaint in Interpleader and for Injunctive Relief (Document No. 48), are both DENIED.  It is further

ORDERED that Defendant Village Contractors, Inc.'s Partial Motion for Summary Judgment on Plaintiff Chaucer Corporate Capital, No. 2 Limited's Interpleader Action (Document No. 24) and Defendant Village Contractors, Inc.'s Supplemental Motion for Summary Judgment on Plaintiff Chaucer Corporate Capital, No. 2 Limited's Interpleader Action (Document No. 56) are both DENIED.  It is further

ORDERED that Third-Party Plaintiff Village Contractors Inc.'s Motion for Rule 11(b) Sanctions Regarding Third-Party Defendant Jagdesh Azad's "Joinder in Pending Motions to Dismiss" (Document No. 75); Motion for Cost and Expenses Pursuant to Federal Rule 4(d)(2) for Service on Third-Party Defendant Jagdesh Azad (Document No. 77); Motion for Leave to File Motion to Strike or, in the Alternative, Objections and Reply to Defendant Jagdesh Azad's Late-Filed Response to the Motion for Sanctions Against Attorney Harmeyer (Document No. 82); and Motion for Leave to File Motion to Strike or, in the Alternative, Objections and Reply to Defendant

Jagdesh Azad's Late-Filed Response to the Motion for Costs (Document No. 86), are all DENIED.  It is further

ORDERED that Village Contractors, Inc.'s Motion to Have Interplead Funds Deposited in Funds in Interest Bearing Account (Document No. 83) is GRANTED in part, and the Order signed and entered October 1, 2009, is AMENDED to require that the Clerk of Court deposit in an interest-bearing account the funds therein ordered to be paid into the Registry of the Court, and Village's motion is otherwise DENIED as moot.

The Clerk will enter this Order and provide a correct copy to all parties.

SIGNED at Houston, Texas, on this 15th day of September, 2010.


_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE