IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

VILLAGE CONTRACTORS, INC.,

    Plaintiff,

v.

TRADING FAIR IV, INC.,

    Defendant.

§
§
§
§
§
§
§
§

CIVIL ACTION NO. H-09-2701

## ORDER ON ATTORNEYS' FEES AND PREJUDGMENT INTEREST

Pending are the submissions and affidavits filed by Plaintiff Village Contractors, Inc. ("Village") in support of its request for $250,370.73 in attorneys' fees and an award of 18 percent prejudgment interest on the $338,382.00 jury verdict returned in its favor on April 13, 2011, following a three-day trial on Village's claims for breach of contract and for violation of the Prompt Payment to Contractors Act. TEX. PROP. CODE ANN. § 28.001 *et seq*. (West 2000). Defendant Trading Fair IV, Inc. ("Trading Fair") has filed briefs and a supporting affidavit in opposition to the requests both for attorney's fees and for prejudgment interest.

In this interpleader action Chaucer Corporate Capital, Limited, Trading Fair's insurer, deposited insurance proceeds in the amount of $338,382.00 into the registry of the Court based on Village's and Trading Fair's conflicting claims to the insurance proceeds arising out of a dispute over Village's repairs to Trading

Fair's hurricane-damaged roof.   Village and Trading Fair, as claimants to the interpled funds, filed cross-claims asserting their right to the funds.   Prior to trial, both parties agreed that any recovery on their substantive cross-claims would be paid, in whole or in part, out of the interpled funds.   The jury awarded Village the entire principal amount in the Court's registry on its substantive claim.   The issues now presented are Village's claims for interest and attorney's fees.

## I.   Attorney's Fees

"State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision." Walker Int'l Holdings, Ltd. v. Republic of Congo, 415 F.3d 413, 415 (5th Cir. 2005) (citation omitted).   Under Texas law, "reasonable" attorney's fees are recoverable for a successful breach of contract claim, *see* Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West 2008), and for a successful claim under the Prompt Payment to Contractors Act (the "Prompt Payment Act").   Tex. Prop. Code Ann. § 28.005(b) (West 2000).   Although the decision whether to award fees to a prevailing party is discretionary under the Prompt Payment Act, it is mandatory under section 38.001.[1]   Furthermore, because both

---

[1] *See* Bocquet v. Herring, 972 S.W.2d 19, 20-21 (Tex. 1998) (holding that statutes providing "that a party 'may recover'" attorney's fees are mandatory, whereas statutes providing "that the court 'may' award attorney fees" are discretionary); *and compare* Tex. Civ. Prac. & Rem. Code § 38.001 ("A person may recover reasonable

2

statutes measure fees recoverable by the reasonableness standard, it is appropriate to consider Village's request pursuant to section 38.001. *Cf.* <u>AMX Enters., L.L.P. v. Master Realty Corp.</u>, 283 S.W.3d 506, 516 (Tex. App.--Fort Worth 2009, no pet.) (noting that the contract sued upon authorized recovery of attorney's fees under both the Prompt Payment Act and section 38.001, and deciding to "focus our analysis on attorney's fees under section 38.001").

Both the Fifth Circuit and Texas courts apply substantially the same method to calculate statutorily-awarded attorney's fees. <u>Mid-Continent Cas. Co. v. Chevron Pipe Line Co.</u>, 205 F.3d 222, 232 (5th Cir. 2000); *see also* <u>Arthur Andersen & Co. v. Perry Equip. Corp.</u> 945 S.W.2d 812, 818 (Tex. 1997). First, the "lodestar" amount is calculated, whereby a reasonable hourly rate is multiplied by "the compensable hours from the attorneys' time records, including only hours reasonably spent." <u>Shipes v. Trinity Indus.</u>, 987 F.2d 311, 319 (5th Cir. 1993). "[T]he requested fees must bear a 'reasonable relationship to the amount in controversy or to the complexity' of the circumstances of the case." <u>Mid-Continent</u>, 205 F.3d at 232 (quoting <u>Jerry Parks Equip. Co. v. Se. Equip. Co.</u>, 817 F.2d 340, 344 (5th Cir. 1987)). In determining whether hours expended are excessive, the Court may look to "the entire record" and may "view the matter in the light of the

---

attorney's fees . . . .") *with* TEX. PROP CODE § 28.005(b) ("[T]he court may award costs and reasonable attorney's fees as the court determines equitable and just.").

3

testimony, the amount in controversy, the nature of the case, and our common knowledge and experience as lawyers and judges." Id. (quoting Jerry Parks, 817 F.2d at 344). The party seeking attorney's fees bears the burden of proving the reasonableness of the time expended and the hourly rate, and further must segregate fees between claims for which they are recoverable and those for which they are not. Tony Gullo Motors I, L.P. v. Chapa, 212 S.W.3d 299, 310-14 (Tex. 2006).

Once the lodestar amount is set, it may then be adjusted upward or downward based on any of the twelve factors listed in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), that have not already been considered in calculating the lodestar amount. Shipes, 987 F.2d at 320.[2]

A.   Lodestar

Village's request for $250,370.73 in attorney's fees is based upon hourly rates of $150.00 both for its lead attorney, a senior associate at her firm, and her co-counsel Bryan C. Mitchell, and an

---

[2] The Johnson factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the awards in similar cases. Johnson, 488 F.2d at 717-19.

4

hourly rate of $60.00 for paralegal services.  Village submitted with its request a spreadsheet summarizing its attorneys' time spent, showing a total of 1,376.2 attorney hours and 617.4 paralegal hours, which, multiplied by their respective rates and added together, total $243,474.00 (Village later modified or revised the claim to $242,500.00).  The difference between the $243,474.00 sum and the requested amount of $250,370.73 is not explained, but a review of the invoices and itemized time entries attached to Village's request reveals that Village also included in its attorney's fees request non-taxable expenses, such as postage, fax, and long distance charges.  The Court finds that these items, evidently totaling $6,896.73, represent "expenses of litigation,"[3] which "make up the overhead of a law practice."  Flint & Assocs. v. Intercontinental Pipe & Steel, Inc., 739 S.W.2d 622, 626-27 (Tex. App.--Dallas 1987, writ denied).  Under the lodestar method the Court is to consider only the reasonable hourly rate multiplied by the number of hours reasonably expended, not additional expenses such as these.[4]

---

[3] See Shenandoah Assocs. v. J & K Props., Inc., 741 S.W.2d 470, 487 (Tex. App.--Dallas 1987, writ denied) (holding that charges for "delivery services . . . travel; long distance calls; bond premiums; postage" and other charges were "expenses of litigation that are not recoverable . . . under the Texas general rule and authorities").

[4] Indeed, under Texas law, such overhead expenses are already presumed to be "considered in setting hourly billing rates and reasonable fees," see id., which would make their recovery in addition to reasonable fees double-counting.  See Kimberly-Clark

5

Although Village's claimed hourly rates are not challenged and the Court finds they are reasonable, Trading Fair does challenge as excessive the number of hours claimed by Village's counsel. Village includes not only hours reasonably spent on its breach of contract and Prompt Payment Act claims in the instant case, but also on: (1) litigation with third parties (its sub-contractor, Mobile Dry Force, LLC, and additionally a landlord to whom Village asserts it could not pay rent because of Trading Fair's breach of the contract); (2) litigation with Trading Fair in a related case in Texas state court; and (3) services relating to a number of non-contractual claims along with its contractual claim.

## 1.  Third-Party Litigation Attorney's Fees

Under Texas law, a plaintiff may recover attorney's fees and other reasonable expenses incurred in third-party litigation as an element of damages if the plaintiff proves that "such damages are the natural and proximate consequence of the defendant's wrongful conduct, i.e., *when those expenses represent consequential damages*." Great Am. Ins. Co. v. AFS/IBEX Fin. Servs., Inc., 612

_____

Corp. v. Factory Mut. Ins. Co., No. C-09-312, 2008 WL 1958998, at *10 (N.D. Tex. Apr. 30, 2008) (rejecting request for non-taxable costs in addition to reasonable attorney's fees (citing Flint, 739 S.W.2d at 626-27; Sparks v. Baxter, 854 F.2d 110, 115 (5th Cir. 1988) (holding valid a party's contention "that the district court improperly awarded [the prevailing parties] an amount that represented expenses their attorneys incurred in litigating the case."))).

F.3d 800, 807 (5th Cir. 2010) (emphasis added); *see also* <u>Lesikar v.</u>
<u>Rappeport</u>, 33 S.W.3d 282, 306 (Tex. App.--Texarkana 2000, pet.
denied) ("[A]ttorneys' fees incurred in prior litigation with a
third party are recoverable in a subsequent suit as actual
damages."). Village's claim for attorney's fees incurred in third-
party litigation is therefore not a claim for attorney's fees under
either section 38.001 or the Prompt Payment Act, but instead a
claim for consequential damages resulting from Trading Fair's
breach.

A claim for attorney's fees as consequential damages must be
"proved at trial as an element of damages." FED. R. CIV. P.
54(d)(2)(A); *see* <u>United Indus., Inc. v. Simon-Hartley, Ltd.</u>, 91
F.3d 762, 765-66 (5th Cir. 1996) (noting that Federal procedural
law governs requests for attorney's fees); <u>Malin Int'l Ship Repair</u>
<u>& Drydock, Inc. v. M/V SEIM Swordfish</u>, 611 F. Supp. 2d 627, 636
(E.D. La. 2009), *aff'd sub nom* <u>Malin Int'l Ship Repair and Drydock,</u>
<u>Inc. v. Veolia Es Special Servs. Inc.</u>, 369 F. App'x 553, 555 (5th
Cir. 2010) ("In distinguishing between attorney's fees that are
recoverable by motion, and those that are only recoverable as an
element of damages, courts have differentiated between claims for
attorney's fees based on 'prevailing party' contractual provisions
and claims for attorney's fees based on other types of contractual
provisions. . . . [W]hen a party seeks attorney's fees stemming
from a breach of contract, courts have found the issue of

attorney's fees to be an element of damages." (citing <u>Rockland Trust Co. v. Computer Associated Int'l, Inc.</u>, No. 95-11683-DPW, 2008 WL 3824791, *5 (D. Mass. Aug. 1, 2008)) (quotation marks omitted)); *see also* <u>Pride Hyundai, Inc. v. Chrysler Fin. Co., LLC</u>, 355 F. Supp. 2d 600, 605-06 (D.R.I. 2005) ("Because the attorneys' fees in this case were in the nature of damages, CFC had the burden of proving at trial that it was contractually entitled to those fees it sought in its counterclaim.").

Aside from a brief reference to lost credit rating and having to breach its Houston lease--with no proof of any attendant monetary damages--Village failed to present any evidence at trial regarding its entitlement to, and the amount of, *any* consequential damages, let alone consequential damages relating to its third-party litigation against its landlord and against Mobile Dry Force.[5] Because Village concedes that its attorney's fees claim includes 121.6 hours relating to third-party disputes on its lease and against Mobile Dry Force[6]--which number Trading Fair does not challenge--the fees of $18,240.00 ($150 per hour multiplied by

---

[5] Indeed, Village did not request a jury instruction regarding these consequential damages; the closest it came was a request for an instruction on the general definition of consequential damages: "Consequential damages result naturally, but not necessarily, from opposing party's wrongful acts. Consequential damages must be foreseeable and directly traceable to the wrongful act and result from it." Document No. 219 at 29. The Court denied this requested instruction because there was no evidence to support a recovery of consequential damages.

[6] *See* Document No. 235, ex. A at 4.

8

121.6 hours) attributable to those hours will not be included in the lodestar amount.

### 2. State Court Litigation Attorney's Fees

Village pursued related litigation against Trading Fair and others in state court in addition to its advocacy in this interpleader action. The Texas Supreme Court made clear in Tony Gullo Motors I, L.P. v. Chapa that a fee applicant is not excused from segregating recoverable from unrecoverable claims due merely to factual interrelatedness. 212 S.W.3d 299, 313 (Tex. 2006); *see also* Reinhardt v. Walker No. 14-07-00304, 2008 WL 2390482, at *6 (Tex. App.--Houston [14th Dist.] 2008, pet. denied) ("[T]he mere fact that claims are based on common facts or are 'intertwined' does not make all fees incurred recoverable."). Instead, no segregation is required only when each discrete legal service "advance[s] both a recoverable and unrecoverable claim"--that is, the discrete service would have been necessary even absent the claims for which attorney's fees cannot be recovered. Chapa, 212 S.W.3d at 313-14; *see also* id. at 313 ("To the extent such services would have been incurred on a recoverable claim alone, they are not disallowed simply because they do double service."). Village provides no explanation as to how each discrete service regarding the state court action was necessary to advance the breach of contract or Prompt Payment Act claims on which it prevailed in *this*

9

Court, as distinguished from being related only because of intertwined facts. From an exhaustive review of Village's billing records, and separate from the reductions already claimed to have been made by Village's counsel of time attributable to Village suing Trading Fair's attorney and its public adjuster in the state court suit,[7] the Court finds approximately $29,000.00 of attorney's fees claimed in the state court action before any mention is ever made of this suit in Plaintiff's billing records, plus roughly $12,225.00 of fees that are found to relate solely to the state court action after the commencement of this suit.[8]

Some legal services rendered in the state court case may have been required in Village's breach of contract and Prompt Payment Act suit in this Court and hence should be counted, but Village has not identified those services with proof sufficient for the Court to make an allowance for them. Accordingly, the approximate sum of $41,225.00 solely attributable to Village's state court case will not be included in the lodestar amount.

---

[7] *See* Document No. 228-1 at 12.

[8] For example, Village seeks recovery of attorney's fees for correspondence, preparation, and filing of and relating to various procedural aspects of the state court case--such as motions to stay, motions to consolidate, checking the state court case status, scheduling order disputes, and sanctions under Texas law, among other things. *See, e.g.*, Document No. 228, ex. F (Feb. 17-19, Mar. 11-15, Apr. 5-16, Aug. 10-12, 2010 entries). Village also seeks attorney's fees relating solely to its attorney's withdrawal from the state court case. *See* id., ex. F (Aug. 27 through Sept. 1, 2010 entries).

10

3.    Apportionment of Fees of Services Advancing Both
      Contractual and Non-Contractual Claims, and Analysis
      of Time Not Reasonably Spent on the Contract Claim

Even legal services that advance both recoverable and non-recoverable claims must further be examined to determine what portion of the charges for each service should be allocated to the recoverable claims.    For example, if drafting a complaint, requesting disclosures, or otherwise discovering background facts would be necessary for both fee-recoverable breach of contract claims and non-fee-recoverable tort claims, the fee applicant should provide some opinion or basis for allocating the proportion of time spent on that discrete service directly attributable to the fee-recoverable breach of contract claims.    See Chaparral Tex., L.P. v. W. Dale Morris, Inc., No. H-06-2468, 2009 WL 455282, at *7 (S.D. Tex. Feb. 23, 2009) (Rosenthal, J.) (citing and examining Chapa, 212 S.W.3d at 313-14); see also Chapa, 212 S.W.3d at 314 (noting that, while the attorneys "did not have to keep separate time records when they drafted the fraud, contract, or DTPA paragraphs of her petition[,] an opinion would have sufficed stating that, for example, 95 percent of their drafting time would have been necessary even if there had been no fraud claim").

In this case, while certain correspondence, depositions, other fact-finding, and research would have been necessary to Village's recovery on its breach of contract claim, it is quite evident that the total time attributable to those kinds of services would not

11

have been as large had there been only the breach of contract and Prompt Payment Act claims in this suit. For example, while the depositions presumably gathered information on the contract claims pending both in this Court and in state court, there is no showing that they did not also explore various other claims, including lien claims and various tort claims (such as fraud) against not only Trading Fair, but various other related (and arguably unrelated)[9] parties, such as Trading Fair's attorney, William Harmeyer, and Trading Fair's public adjuster, A.J. Vise.[10]   While Village in its

---

[9] *See, e.g.*, Document No. 231, ex. A at 10 (transcript from Aug. 27, 2010 state court hearing) ("THE COURT: . . . When [Village] didn't get paid, [its president] decided he was going to sue everybody in sight, including the people that owe the money, the insurance company, any adjuster that ever came near the place.").

[10] *See, e.g.*, Document No. 228, ex. F (Mar. 18, 2009 entry) (noting preparation of interrogatories for "*Defendant* A.J. 'Jeff' Vise"); id., ex. F (Sept. 1, 2009 entry) (noting receipt and examination of "*Defendant* William F. Harmeyer's Original Answer"). In sum, Village's state court suit, as amended, asserted claims of breach of contract, quantum meruit, fraud, breach of fiduciary duty, theft, conversion, fraudulent inducement, misrepresentation, tortious interference with existing contract, and business disparagement and defamation claims variously against multiple parties, including Trading Fair and the partners of a limited partnership affiliated with Trading Fair, in addition to Harmeyer and Vise. Image No. 43097408, Village Contractors, Inc. v. Trading Fair IV et al., No. 2009-07591 (89th Dist. Ct., Harris County, Tex. filed Feb. 6, 2009). Village dismissed its contract claims in that court on March 25, 2010, but Trading Fair thereafter asserted in that case a counterclaim for breach of contract. Id., Image Nos. 44958343, 44951871. In the suit tried in this Court, Village originally asserted claims for breach of contract, quantum meruit, unjust enrichment, and breach of fiduciary duty against Trading Fair, the two limited partners separately sued in state court, and numerous other possibly related corporate entities in which those limited partners had interests, as well as the wives of the two

instant request for attorney's fees has removed many entries
relating to Harmeyer and Vise as defendants, it has not identified
discrete entries relating on the one hand to (1) non-contractual
claims against Trading Fair and related parties, including Harmeyer
and Vise, and on the other hand to (2) Village's successful
contract claim against Trading Fair.[11]  In fact, Village appears
still to include in its request some entries relating only to
Harmeyer or Vise.[12]  These are a few examples gleaned from a careful
review of the billing records, which billing records intrinsically
fail to provide proof of what proportion of the fees are
recoverable where the services rendered are for both fee-
recoverable and non-fee-recoverable claims.

---

limited partners (who were also listed as limited partners in the
affiliated entity). *See* Document No. 44. It dismissed its claims
in this Court against parties other than Trading Fair at a hearing
on December 2, 2010.  *See* Document No. 133 (Minute Entry), and
later added its Prompt Payment Act claim against Trading Fair.
Document No. 142 at 4-5.

[11] *See, e.g.*, id., ex. F (Sept. 2, 2009 entry) (preparing
written discovery responses for various parties, including both
Trading Fair and William Harmeyer); id., ex. F (Aug. 13-27, 2010
entries) (preparation for and moving to compel Vise's second
deposition); id., ex. F (Aug. 17-20, 2010 entries) (preparing a
motion to compel, attending a hearing on attorney-client privilege
apparently related to Harmeyer's presence as a defendant); *see also*
Image No. 46072324 at 2-3, Village Contractors, Inc., No. 2009-
07591 (Village's Motion for Ruling on Claims of Attorney-Client
Privilege During Deposition of Hardam S. Azad, relating to issues
of attorney-client privilege due to Harmeyer's status as a party in
the case, and asking the court "to re-consider the previously filed
Motion to Disqualify Attorney Harmeyer").

[12] *See, e.g.*, id., ex. F (Aug. 3, 2010 entry) ("Review legal
authority on lawsuits against attorneys by opposing non-client.").

13

Village's counsel has filed an affidavit that no more than 10 percent of Village's request, or $24,250.00, includes fees for "any non-contractual claim against any non-Trading Fair IV related party" and, if that sum is deducted, Village's alternative fee claim is reduced to $218,250.00.[13] The Court, with all due respect to counsel, is unable to accept her 10 percent estimate of $24,250.00, which is just a little more than the $18,240.00 already rejected for attorney's fees claimed in the nature of unproven consequential damages for third-party litigation, and considerably less than the $41,225.00 already rejected for fees solely attributable to the state court litigation. The Court is unable to find that all but $24,250.00 of a fee claim for $242,500.00 was attributable solely to Village's contract claim, especially in light of the Court's familiarity with the litigation and based on the services described in counsel's billing records.

Both counsel for Village and counsel for Trading Fair agree that $43,500 would be a reasonable attorney's fee for a "simple breach of contract case."[14] This case, however, involved multiple complications, including the presence of additional parties for much of its pendency, dual litigation in state and federal court, and a sizable, indeed, excessive amount of pretrial motions practice. Village is not responsible for injecting all of the

---

[13] Document No. 228, ex. F at 5 (Campbell Aff.).

[14] See Document No. 231, ex. B at 2; Document No. 232 at 4-5.

14

complexities into the case[15] and, to be sure, there is evidence of obfuscation by Trading Fair, especially related to disclosures of its complex layers of corporate, partnership, individual, and employee relationships. There is also ample evidence of Village's own excessive filings. The latter at best demonstrate an over-eagerness to seek Court intervention for what should have been easily-resolved issues[16] or, at worst, represent gamesmanship

---

[15] For example, Chaucer Corporate Capital, Limited, and not Village, filed this interpleader action leading to dual litigation. *See also, e.g.*, Document Nos. 108-110, 112-114 (Motions for Summary Judgment filed by each individual defendant other than Trading Fair IV, containing *identical* arguments); Document No. 125 at 1-3 (Trading Fair's request that Village's counsel be required to show authority to proceed in this case after her discharge from the state court case, which its attorney submitted to the Court rather than simply calling Village's counsel to ask if she still represented Village here).

[16] For example, Village filed a Rule 4(d)(2) motion for costs of service resulting from Defendant Jagdesh Azad's refusal to waive service of process. *See* Document No. 77. While Rule 4(d)(2) permits such recovery, Village's counsel never asked for reimbursement prior to filing the motion. Instead, she sent a copy of the motion to Jagdesh Azad's counsel while he was out of town, then filed the motion the following day, asking not only for costs of service, but for the costs incurred in drafting and filing the motion, which far outweighed the service costs. *See* Document No. 85 at 2-3; <u>id.</u>, ex. 1. The Court previously denied this spurious request, *see* Document No. 115 (Memorandum and Order dated Sept. 15, 2010), yet it appears before the Court once more, this time unsuccessfully hiding within a mountain of billing statements. Similarly, Village moved to strike Trading Fair's answer and cross-claims due to its late joinder of additional parties related to Trading Fair's unrelated insurance coverage dispute. *See* Document No. 120. While technically correct on the late joinder issue, Village's counsel's billing records reflect correspondence *the same day* from counsel for one of Trading Fair's insurers that Trading Fair had agreed to non-suit the late-joined insurers, which it did indeed do approximately one month later.

designed to harass opposing counsel.[17] Even if the more benign explanation is correct, the billing records appear bloated due to the introduction of needless complexity to this litigation. Village is entitled to only those attorney's fees that were reasonably and necessarily incurred in its successful prosecution of its breach of contract claim, which at its core was a simple breach of contract action involving a factual dispute over the quality of the roofing repairs performed. *See generally* Chaparral, 2009 WL 455282, at *15-16 (noting Texas appellate courts' "inquiry into the complexity of the legal issues and the conduct of the opposing party when asked to approve a fee award high in relation to the damages sought or awarded," and comparing cases in which attorney's fees were excessive due to the applicant's over-preparation to cases in which high attorney's fees were justified in view of "[t]he opposing party's conduct"); *see also* Mid-Continent Cas. Co. v. Chevron Pipe Line Co., 205 F.3d 222, 234 (5th

---

[17] In this regard, Village doggedly pursued putative claims personally against Trading Fair's attorney of record, including a non-redacted charge for review of "legal authority on lawsuits against attorneys by opposing non-client." Document No. 228, ex. F (Aug. 3, 2010 entry). Village also has submitted charges relating to research on witness tampering, disqualification of counsel, and perjury in a civil case. Id., ex. F (Aug. 6-9, 2010 entries). The claims against Harmeyer were dismissed by the state court on his motion for summary judgment, and the motion to disqualify was denied, although Village sought reconsideration of the disqualifi-cation denial at least once. *See* Image Nos. 48331980, 46072324, Village Contractors, Inc. v. Trading Fair IV et al., No. 2009-07591 (89th Dist. Ct., Harris County, Tex. filed Feb. 6, 2009).

16

Cir. 2000) ("[B]ased on our review of the record . . . the award for this action . . . is excessive for what was--*or at least should have been*--simply a coverage dispute." (emphasis in original)).

Many of Village's attorney's fees submissions demonstrate its engagement in what the state court judge labeled a "scorched earth" litigation strategy, and noted that the parties "are here every week arguing about every thing."[18] This Court also implied some criticism of the parties during the long pendency of this case.[19] A further example of needless motion practice, in addition to the filings already noted,[20] is Village's filing of multiple objections and requests to strike filings and for sanctions.[21] The sheer volume of these filings on a case of this nature and size is extraordinary. None of these motions or requests was granted, many

---

[18] *See* Document No. 231, ex. A at 10.

[19] *See, e.g.*, Document No. 153 at 10 (Dec. 2, 2010 Hearing Transcript) (noting the "rash of parties and claims" pending); Document No. 170 at 11 (Jan. 7, 2011 Docket Call Hearing Transcript) ("Since our hearing a little over a month ago, you have filled up two more files of stuff, and I'm feeling very sorry for your clients at this point. There just seems to be so much needless contentiousness here. . . . I know what the fund is you are fighting over and probably it is approaching using that all up on lawyers' fees at this point . . . .").

[20] *See supra* nn. 16-17.

[21] *See, e.g.*, Document Nos. 59, 65, 75, 77, 82, 86, 120, 141, and Document No. 177 at 12.

wholly lacked merit,[22] and several were filed *in addition* to substantive filings, which substantive filings often included not only briefing on the merits but repetitions of the separately-filed objections.[23]

The Court has observed additional defects in Village's application, but further elaboration is unnecessary. Suffice it to say that Village's claim for attorney's fees has substantial defects and includes many legal services for which Village is entitled to no recovery of attorney's fees from Trading Fair. Nonetheless, it is also evident that Village's counsel rendered substantial services in successfully obtaining a jury verdict at the end of a full trial for the full amount of the interpled fund. Village has also shown itself entitled to prejudgment interest, as set forth below, under the Prompt Payment to Contractors Act.

---

[22] For instance, Village twice filed motions for leave to file a motion to strike responses to its motions, asserting that the responses were late. *See* Document Nos. 82, 86. The responses, however, were filed within 21 days after the respective motions, and were therefore plainly on time. *See* FED. R. CIV. P. 6(a)(1); Local Rules 7.3, 7.4. In an even more egregious example, Village filed a motion for sanctions due to Defendant Jagdesh Azad's joinder in then-pending motions to dismiss filed by other defendants. *See* Document No. 75. Jagdesh Azad joined those motions shortly after Village served her in this action, and she added no additional arguments whatsoever to the pending motions. Village implausibly asserted that her joinder in the motions was filed solely to increase litigation costs, even though the only increase in costs resulted from Village's motion.

[23] *Compare* Document No. 59 *with* Document Nos. 60, 70; *and compare* Document No. 65 *with* Document No. 70; *and compare* Document No. 120 *with* Document No. 121.

Regrettably, in its aggressive pursuit of the contract claim, Village ventured into a wide range of unrelated tort and other allegations, unnecessarily joined numerous parties who were not liable on the contract, and engaged--with substantial help from Trading Fair--in a great amount of unnecessary contentiousness.

Village in its present submissions has not made it an easy task for the Court to tease out from its total attorney's fees claim the legitimate portion thereof that falls within the ambit of reasonable attorney's fees for successfully prevailing on its breach of contract claim. Village has demonstrated, however, a substantial amount of time reasonably spent on the contract claim, and the Court--having presided over the jury trial--observed counsel's preparation for and successful prosecution of the contract claim. Based upon the foregoing and a careful review of Village's billing records, and also drawing from 50 years of trial experience in this profession, the Court finds from a preponderance of the evidence that Plaintiff's two attorneys reasonably devoted 600 hours of attorney time to the successful prosecution of the contract claim, for which a reasonable fee, at the reasonable rate of $150 per hour claimed by Village's counsel, in the amount of $90,000.00, should be awarded. Moreover, applying to the claim for the contributions of legal assistants the same ratio of the hours claimed to the hours found to be reasonable for counsel, the Court finds that 270 hours of legal assistant time was reasonably

19

employed on Village's successful breach of contract claim. Multiplying 270 hours by a reasonable rate of $60 per hour equals $16,200.00, which should be awarded. Thus, in all, the Court finds that the loadstar for Village's recovery of reasonable attorney's fees is the total sum of $106,200.00.

## B.   Adjustment of the Lodestar Amount

The Court finds that there is no <u>Johnson</u> factor not already considered that would merit adjustment of the lodestar amount. Village is therefore entitled to a recovery of $106,200.00 in reasonable attorney's fees.[24]

## II.  Prejudgment Interest

Village claims 1.5 percent simple interest per month as prejudgment interest pursuant to the Prompt Payment to Contractors

---

[24] To the extent Village requests costs by way of the "Bill of Costs" attached to its reply in support of its motion for attorney's fees, that request is denied without prejudice. Village has provided no affidavit verifying the accuracy or necessity of the costs, nor the necessity of the services for which the costs were incurred. *See* 28 U.S.C. § 1924; <u>Alexander Mfg., Inc. v. Emp'ee Stock Ownership and Trust v. Illinois Union Ins. Co.</u>, 688 F. Supp. 2d 1170, 1176 (D. Ore. 2010) (denying bill of costs without prejudice to re-file where the prevailing party's attorney failed to verify the necessity of costs in his affidavit). Regardless, Local Rule 54.2 provides that a bill of costs is to be submitted within 14 days of the entry of a final judgment. Counsel is cautioned in filing a "Bill of Costs" to include only taxable costs and to avoid the kinds of deficiencies found in Village's attorney's fees request. *See* 28 U.S.C. § 1920.

Act.  Under this Act, an owner must pay a contractor for work done on real property within 35 days of the contractor's invoice for the work; failure to do so results in the accrual of 1.5 percent monthly (18 percent annual) interest on the amount due until the earlier of the date of delivery of the money or the date of judgment for the amount.  TEX. PROP. CODE §§ 28.002, 28.004.

None of Trading Fair's four objections to this award is meritorious.  First, its contention that Trading Fair did not withhold payment because the money claimed remained with its insurer or the Court directly contradicts the jury's finding "that Trading Fair IV withheld payment of any portion or all of the sum" owed to Village "without there being a good faith dispute as to that portion[.]"[25]  Second, the cases it cites to support its position that "prejudgment interest . . . cannot be assessed against an interpleader defendant"[26] are inapposite.  See Phillips Petrol. Co. v. Adams, 513 F.2d 355, 369-70 (5th Cir. 1975); State Farm Life Insurance Co. v. Martinez, 216 S.W.3d 799, 808 (Tex. 2007).  In Martinez, the Texas Supreme Court held that prejudgment interest could be assessed against an insurer for delayed payment of life insurance proceeds to a beneficiary only up until the time the insurer interpled the proceeds into court due to conflicting claims of beneficiary status.  216 S.W.3d at 802, 806.  In that

---

[25] Document No. 225 at 13.

[26] Document No. 233 at 2.

circumstance, the "interpleader sufficed in place of payment," as the insurer, recognizing competing "adverse bona fide claims," was no longer delaying payment, which was the action sought to be punished by the prompt payment statute. Id. at 806. Likewise, in Phillips, a stakeholder was held liable for prejudgment interest *only* during the time period in which "it enjoyed a reasonably free use of the money, that is, from the time Phillips collected the suspense money until the day it tendered or paid the funds into the registry of the district court." 513 F.2d at 369; *see also* id. at 370 ("Once a stakeholder makes an unconditional offer to give up possession of a disputed fund, it ceases to exert that dominion over the money sufficient to justify an obligation to pay interest thereon, and the rule is that once such an unconditional tender is made, any liability for interest ceases as of the date of tender."). Here, in contrast, Trading Fair did not file this interpleader action and, indeed, it made no "unconditional offer to give up possession" of the disputed amount; quite to the contrary, it asserted either that it was entitled to the interpled funds directly, or that it was entitled to have those funds returned to the insurer to be credited or remitted to Trading Fair for damage to its property.

Trading Fair's third objection, that Village failed to plead its Prompt Payment Act claim, ignores Village's Answer and Amended

22

Third-Party Complaint Against Trading Fair IV, Inc., wherein
it does plead a Prompt Payment Act violation.[27]  Trading Fair's pre-
trial motion to strike this filing was denied.[28]   Trading Fair's
fourth and final objection is also unpersuasive.   Even assuming
that the Court is not "required to award the Texas Prompt Payment
Act's penalty interest,"[29] as Trading Fair asserts, it gives no
reason why the Court should not award the statutory interest.   The

---

[27] *See* Document No. 142 at 3-4.

[28] *See* Document No. 158 (Minute Entry).

[29] Document No. 223 at 3 (citing <u>Landmark Org., LP v. Delphini
Constr. Co.</u>, No. 13-04-371-CV, 2005 WL 2560022, at *3 (Tex. App.--
Corpus Christi Oct. 13, 2005, pet. denied).  <u>Landmark</u>, which no
other court has cited, stated that the court was "not required to
rely only on the interest rates mandated by" the Prompt Payment Act
and another statute, because "this is not a claim involving
wrongful death, personal injury, property damage, or condemnation."
2005 WL 2560022, at *3 (citing <u>Phillips Petrol. Co. v. Stahl
Petrol. Co.</u>, 569 S.W.2d 480, 485 (Tex. 1978) (recognizing two bases
for prejudgment interest awards: an enabling statute and general
principles of equity)).   However, <u>Landmark</u> appears mistakenly to
have presumed that TEX. FIN. CODE ANN. § 304.102, which requires
prejudgment interest on "[a] judgment in a wrongful death, personal
injury, or property damage case," is the sole enabling statute for
an award of prejudgment interest, thereby apparently rendering
application   of   any   other   prejudgment   interest   statute
discretionary.   *See* <u>Landmark</u>, 2005 WL 2560022, at *3 ("Statutory
prejudgment interest applies only to judgments in wrongful death,
personal injury, property damage, and condemnation cases." (citing
TEX. FIN. CODE ANN. §§ 304.102, 304.201; <u>Johnson & Higgins of Tex.,
Inc. v. Kenneco Energy</u>, 962 S.W.2d 507, 530 (Tex. 1998))).   This in
turn appears to be a misreading of <u>Kenneco</u>, which addressed only
whether that statute's predecessor's "calculation rules apply to
all judgments," *not* whether the statute's listing of causes of
action was the exclusive enabling statute for prejudgment interest
in Texas.   Section 28.004 of the Property Code expressly sets out
calculation of prejudgment interest in this case.

Court finds in light of the facts proven and the Jury's finding in this case, that Village should be awarded interest under the Act.

Village will therefore be awarded prejudgment interest under Texas law at the rate of 1.5 percent per month on $338,382.00 from December 25, 2008,[30] to the date of this Order, 30 and one-half months later, in the amount of $154,809.77.

## III.   Order

Based on the foregoing, it is

ORDERED AND ADJUDGED that Plaintiff Village Contractors, Inc. is entitled to entry of a Final Judgment against Defendant Trading Fair IV, Inc. for $338,382.00 in damages, $106,200.00 in reasonable attorney's fees, and $154,809.77 in prejudgment interest, for a total Final Judgment of $599,391.77--toward which the $338,382.00 interpled into the Court's registry and interest earned thereon, will be applied--plus taxable costs of court and post-judgment interest as provided by law.  If Plaintiff successfully defends an appeal of the Final Judgment to the United States Court of Appeals for the Fifth Circuit, then Plaintiff shall have and recover from

---

[30] This is 35 days after Village sent Trading Fair its invoice. *See* Document No. 227, ex. 1; *see also* TEX. PROP. CODE §§ 28.002(a), 28.004(a).

24

Trading Fair IV, Inc. an additional attorney's fee of $15,000.00, which the Court finds is reasonable.

The Clerk shall notify all parties and provide them with a true copy of this Order.

SIGNED at Houston, Texas on this 11ᵀᴴ day of July, 2011.


EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE